**STATE of Missouri, Plaintiff/Respondent,**

**v.**

**Wilbert TATE, Defendant/Appellant.**

**No. 57033.**

Missouri Court of Appeals, Eastern District, Division One.

Aug. 27, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 25, 1991.

Application to Transfer Denied Nov. 19, 1991.

---

Raymond Legg, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANE, Judge.

Defendant, Wilbert Tate, was convicted by a jury of Assault First Degree in violation of § 565.050 RSMo 1986, and Armed Criminal Action in violation of § 571.015 RSMo 1986. He was sentenced as a prior offender to 30 years of imprisonment on the assault conviction and a consecutive term of 30 years on the armed criminal action. On appeal defendant contends the trial court erred in admitting evidence that the victim said "Don't kill me" three times while he was being transported by ambulance after being shot. Defendant argues that the statement was hearsay and does not fall into any recognized exception to the hearsay rule. We affirm on the grounds that the statement was not hearsay because there was no intent to make an assertion of fact.

The sufficiency of the evidence to sustain defendant's conviction is not in dispute. At approximately 5 p.m. on November 30, 1988, Sharon Hampton let defendant into the home she shared with her brother Dwight Oldham, the victim, and her sister Carla Oldham, both of whom were at home. The defendant went to the basement after learning Dwight was there. At approximately 5:10 p.m., Carla and Sharon both heard a "popping" or a "bang" noise from downstairs. One of the sisters went to the basement and heard the defendant curse and say, "I want my money." She also saw the defendant waiving a gun with his right hand. She immediately ran upstairs where she heard a second shot. She called for the police and an ambulance. When a police officer arrived, he saw the defendant leaning over Dwight who had been shot and was lying on the floor. The defendant told the officer that Dwight had pulled out a gun and shot himself during an argument.

When emergency medical personnel arrived, the defendant told them the same story. The paramedics determined that Dwight was clinically dead; he had no pulse, was not breathing and his heart displayed no electrical activity. Paramedics began resuscitation activities for the next 15–17 minutes. While Dwight was unconscious, the paramedics made three unsuccessful attempts at intubation, which involves sticking a metal prong into the patient's mouth. Eventually they were able to establish a pulse and Dwight began breathing on his own. The paramedics then placed an oxygen mask over Dwight's mouth.

After Dwight was resuscitated, the paramedics placed him in an ambulance and inserted two IVs. While in route to the hospital, Dwight became extremely agitated and began "thrashing his upper arms as if to push things away from him." While thrashing, he repeated three times "Don't kill me." During the episode, he pulled out an IV. At the hospital it was established that Dwight had been shot in the right shoulder and the bullet lodged next to his spine. The wound caused massive internal bleeding, partial paralysis, and a coma. He had no powder burns on his skin, indicating he had been shot from a distance greater than two feet. In the opinion of the examining doctor, the wound was not self-inflicted.

During the trial, paramedic Karen Sullivan testified Dwight repeatedly said "Don't kill me" while in the ambulance. The trial court overruled defendant's objection that the statement was inadmissible hearsay. Dwight was alive but comatose at the time of trial and accordingly did not testify. Defendant did not testify but presented the testimony of four witnesses that Dwight had shot himself.

For his only point on appeal, Tate contends that the trial court erred by admitting into evidence Dwight's out-of-court statement, "Don't kill me," because it does not fall within any recognized exception to the rule against admitting hearsay.

"Hearsay evidence is testimony in court of an out-of-court assertion to prove the truth of the matter asserted." *State v. Meyer*, 694 S.W.2d 853, 856 (Mo.App.1985). However, where the action or reaction is uncontrollable, any intent to make an assertion is precluded. *Id.* The statement, "Don't kill me," was not made as an assertion of fact by the victim. It was an utterance made by the victim while not fully conscious and in great physical distress. The statement was a spontaneous reaction of the victim and its description by the paramedic was not hearsay. *Id.; State v. Workes*, 689 S.W.2d 782, 785–86 (Mo.App. 1985); *State v. Abram*, 632 S.W.2d 60, 62 (Mo.App.1982). The evidence was properly admitted.

The judgment of the trial court is affirmed.

REINHARD, P.J., and GARY M. GAERTNER, J., concur.